09-2276, <u>Ute Mountain Ute Tribe v. Rodriguez</u>

**LUCERO**, J., dissenting.

Although I concur in my colleagues' statement of the law, I cannot do so with respect to their application of the law to the facts. In contrast to the Jicarilla Apache Tribe in <u>Cotton Petroleum Corp. v. New Mexico</u>, 490 U.S. 163 (1989), the Ute Mountain Ute Tribe in the case before us presented evidence and the district court found that: (1) New Mexico's taxation of on-reservation oil and gas extraction imposes a substantial economic burden on the tribe; and (2) neither the tribe nor private oil and gas companies receive any on-reservation economic benefit in return. These findings compel the conclusion that the New Mexico taxes are preempted. It is not enough to correctly state the law; by not adhering to it, we deny parties their due justice and distort the jurisprudence of the Supreme Court. Thus I must respectfully dissent.

**I**

My colleagues thoughtfully explain the basic legal principles that distinguish Indian law preemption from traditional implied preemption doctrine. (Majority Op. 14-23.) I have no problem with most of that discussion. Although "generalizations on [Indian law preemption remain] treacherous," <u>White Mountain Apache Tribe v. Bracker</u>, 448 U.S. 136, 141 (1980), the roadmap for this case was drawn by the Supreme Court in <u>Cotton Petroleum</u>, which examined the same five New Mexico taxes at issue in this case as applied on the Jicarilla Apache reservation. 490 U.S. at 168-69. Four factors that

control this appeal were enumerated by the Supreme Court[1]:  (1) the historical backdrop of tribal sovereignty in an area; (2) the extent of the federal regulatory scheme; (3) the tribe's sovereign and economic interests; and (4) the state's interests as reflected by services that it provides.  Id. at 177, 182, 184-86.

I agree with the majority's conclusions as to the first and second of these factors. The history of Ute Mountain Ute sovereignty over oil and gas leasing is relevant but not decisive (Majority Op. 30-31), and the federal regulatory scheme is "extensive [but] not exclusive" (Majority Op. 34).  But, given the district court's uncontested factual findings, the final two factors lead to my conflicting point of view.

## II

There is no dispute; indirect taxes—that is taxes paid by an entity other than the tribe itself—may burden an Indian tribe enough to justify a finding of preemption in some circumstances.  See Cotton Petroleum, 490 U.S. at 187 n.17; Montana v. Crow Tribe of Indians, 484 U.S. 997 (1988) summarily aff'g 819 F. 2d 895 (9th Cir. 1987); Ramah Navajo Sch. Bd. v. Bureau of Revenue of New Mexico, 458 U.S. 832, 836-37 (1982).   The majority concedes as much.  (Majority Op. 35 n.29.)

---

[1] In other contexts, the Supreme Court has considered additional factors in determining if a state tax is preempted, including whether there is value added on the reservation by the regulated activity, California v. Cabazon Band of Mission Indians, 480 U.S. 202, 219-20 (1987), whether the tribe is simply marketing a tax exemption on the reservation, Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 155 (1980), and whether the regulated activity has an off-reservation effect that "necessitate[s] State intervention," New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 336 (1983).

The principle that an indirect economic burden on a tribe may support preemption of a state tax originates in <u>Ramah Navajo</u>. 458 U.S. at 835-36, 846-47. There, New Mexico taxed private construction companies for activities on the Navajo reservation. <u>Id.</u> at 835. The "legal incidence" of the tax fell squarely on the construction contractors. <u>Id.</u> at 836, 844 n.8. But the tribe agreed to reimburse contractors for the tax. <u>Id.</u> at 835-36. Thus, the Supreme Court recognized that "the economic burden of the asserted taxes would ultimately fall on the Tribe," <u>id.</u>, and held the tax was preempted in part because of "burdens . . . imposed indirectly through a tax on a non-Indian contractor . . . ." <u>Id.</u> at 844 n.8. As the dissent in <u>Ramah Navajo</u> characterized the opinion, "the Court clearly [chose] to bar the State from taxing [the private contractor] principally because the tax impose[d] an indirect economic burden on the tribal organization." <u>Id.</u> at 854 (Rehnquist, J., dissenting).

Although the Court did not explain precisely when an indirect tax should be considered burdensome to a tribe, <u>Cotton Petroleum</u> provides us some guidance. In particular, <u>Cotton Petroleum</u>'s focus on trial court findings of fact strongly suggests that the degree of economic burden is best determined by the fact-finder. <u>See</u> 490 U.S. at 185-86, 187 n.17. And unlike in <u>Cotton Petroleum</u>, the district court in this matter found that New Mexico's taxation of oil and gas extractors creates a substantial economic burden on the Ute Mountain Ute.

<u>Cotton Petroleum</u> turned on facts found by the New Mexico state district court. 490 U.S. 185-86. Although the Jicarilla Apache were not a party to either the New Mexico proceedings or the Supreme Court proceedings, the trial court made several

findings concerning the tribe's interests. Importantly, the trial court determined that "no economic burden [fell] on the tribe by virtue of the state taxes," and that the tribe could increase its taxes without adversely affecting its oil and gas development. Id. at 185 (quotation and alteration omitted).[2] Thus, the Supreme Court concluded that any burden asserted by the Jicarilla Apache, as amicus, was "too indirect and too insubstantial to support" preemption. Id. at 187.

In reaching this conclusion, the Court distinguished Montana, a case it summarily affirmed a year prior to Cotton Petroleum. 490 U.S. at 187 & n.17. Montana considered whether certain state taxes on coal extraction were preempted as applied on the Crow Tribe's reservation. Before the Ninth Circuit, Montana had argued that its taxes did "not burden Crow's economic interests because the Tribe itself does not pay the tax . . . the taxes were imposed on the lessee . . . and the Tribe had no duty to reimburse." Crow Tribe of Indians v. Montana, 819 F.2d 895, 899 (9th Cir. 1987). However, an economic expert explained that the state taxes adversely affected tribal coal production and marketability. Id. at 899-900. Seizing on these facts, the Cotton Petroleum Court concluded that the indirect economic burden in Montana was distinguishable because "the [Montana] taxes had a negative effect on the marketability of coal . . . ." 490 U.S. at 186, n.17. Because the Jicarilla Apache—unlike the Crow—made no showing that the state taxes affected the marketability of their oil and gas, the Court held that Montana was inapplicable.

---

[2] These facts were uncontested before the trial court. Cotton Petroleum v. State, 745 P.2d 1170, 1172 (N.M. Ct. App. 1987).

In this case, the Ute Mountain Ute have presented for our consideration facts that are more analogous to Montana and Ramah Navajo. Although the majority conducts an economic burden analysis anew, it is not our office to do so. One must keep in mind that the district court conducted a trial, heard expert testimony, and rendered detailed factual findings, which are now uncontested. As in Montana, the tribe's economic expert testified that the state taxes affect the production and marketability of tribal oil and gas leases. In its findings, the district court concluded that oil and gas production on Ute Mountain Ute lands would be "more attractive" to producers without the taxes and the New Mexico taxes "impose an economic burden on the [tribe] and its members."

Further, as in Ramah Navajo, although the legal incidence of the tax falls on the oil and gas companies, the Ute Mountain Ute lose revenue because they cannot impose the same taxes. The Ute Mountain Ute passed a resolution stating that if the New Mexico taxes were struck down, the tribe would replace them with tribal taxes. Thus, just like the contract provision in Ramah Navajo, the resolution ensures that any revenue collected by New Mexico is revenue the tribe loses. A Ute Mountain Ute tribal tax in the amount equal to the New Mexico taxes would provide an additional $650 per tribal member—no small sum for a tribe whose yearly per capita income is a scant $8,159.[3]

---

[3] Although true that no legal barrier prevents the tribe from imposing a tax equal to that imposed by the state and collecting revenue, see Merrion v. Jicarilla Apache Tribe, 455 U.S. 130 (1982), the district court found that state taxes create an economic barrier to the tribe's ability to raise revenue. The trial court's findings in Cotton Petroleum were precisely the opposite. 490 U.S. 171-72 (trial court "found that the state taxes had not affected the Tribe's ability . . . to impose a higher tax").

-5-

But the majority concludes that the effect of the taxes is "too indirect and too insubstantial" to be considered in the preemption analysis. (Majority Op. 38.) In spite of its reassurance that indirect economic burden may, under other unidentified facts, support a holding of preemption (Majority Op. 35 n.29), the majority seems to have elevated an undisputed fact found by a New Mexico trial court over twenty years ago to a principle of law that binds all tribes indirectly burdened by state taxation. I would leave such fact-finding to the trial courts. The expert testimony proffered by the tribe and adopted by the district court is sufficient to distinguish this case from Cotton Petroleum and support the conclusion that the New Mexico taxes create a substantial economic burden on the Ute Mountain Ute Tribe.

**III**

I also disagree with my colleagues' treatment of the fourth Cotton Petroleum factor: the state's interest in taxation of on-reservation oil and gas extraction. Cotton Petroleum was "not a case in which the State [had] nothing to do with the on-reservation activity, save tax it." 490 U.S. at 186. But this is such a case. In light of the absence of state services utilized by the tribe and on-reservation contractors, this factor strongly supports preemption.

In Cotton Petroleum, the trial court concluded that New Mexico provided "substantial services to both the Jicarilla Tribe and Cotton" approximating $3 million per year. Id. at 185. Indeed, New Mexico "spen[t] as much per capita on members of the Tribe" as it did on non-members. Id. at 171 n.7. Moreover, Cotton Petroleum Corp. conceded that it benefitted substantially from New Mexico's services and admitted to

-6-

receiving $89,384 to assist its operations.  Id. at 185.  Distinguishing Ramah Navajo, the Court determined that these "substantial services," provided to both the tribe and the company on the reservation, supported New Mexico's contention that the taxes were not preempted.  Id.

Ramah Navajo explicitly considered the effect of state services provided to a contractor off-reservation.  458 U.S. at 844.  See also Cent. Mach. Co. v. Ariz. State Tax Comm'n, 448 U.S. 160, 169-70 (1980) (Stewart, J., dissenting) (scolding the Court for ignoring the state's provision of off-reservation services).  The Court roundly rejected the suggestion that off-reservation services could justify a tax whose "burden falls on the tribal organization."  Ramah, 458 U.S. at 844.

Although the majority recognizes the salient distinction between on- and off-reservation services, my colleagues read Ramah Navajo as suggesting that this factor matters only if the burden of the tax falls on the tribe.  (Majority Op. 44.)  As discussed supra, the burden of the taxes in this case does fall on the Ute Mountain Ute, albeit indirectly.  Ramah Navajo does not support the majority's conclusion even under the majority's reasoning.  Immediately following the sentence upon which the majority relies, the Court stated:  "although the state may confer substantial benefits on [the contractor] as a state contractor, we fail to see how these benefits can justify a tax imposed on the construction of school facilities on tribal lands."  458 U.S. at 844.  This statement is consonant with the Court's conclusion in White Mountain Apache that "though the reservation boundary is not absolute, it remains an important factor to weigh

-7-

in determining whether state authority has exceeded the permissible limits." 448 U.S. 136, 151 (1980).

According to the district court, New Mexico "provides substantial services by regulating the off-reservation infrastructure that makes transport of oil and gas possible." Such provisions fall squarely outside the scope of our analysis as delimited by Ramah Navajo and Cotton Petroleum. Neither case considered off-reservation services provided by the state to the company to be a significant part of the preemption analysis. And this distinction makes perfect sense. New Mexico may tax oil and gas companies for their activities off the reservation to compensate for services the state provides generally. As the Ramah Navajo Court stated, "[p]resumably, the state tax revenues derived from [the contractor's] off-reservation business activities are adequate to reimburse the State for the services it provides . . . ." 458 U.S. at 844 n.9. Thus, New Mexico may receive its due compensation without interfering with the Ute Mountain Ute economy.

Because New Mexico provides no on-reservation services[4] to the Ute Mountain Ute or to oil and gas companies, the state's interest in taxation is minimal.

**IV**

I cannot agree with the majority's conclusion that the economic effect of the challenged taxes on the Ute Mountain Ute is "too indirect and too insubstantial." Nor can

---

[4] The state also points to the fact that it offers companies and the tribe many of the services provided to off-reservation oil and gas extractors, such as use of its dispute resolution forum. But because the federal government and the tribe perform these services, there is no need for New Mexico to provide them. Quite to the contrary, the Ute Mountain Ute have rejected such services. Mere proffer of assistance to a tribe does not create a state interest in taxing on-reservation activities.

I agree that New Mexico's provision of off-reservation services may be used to justify taxation of on-reservation activities. Because of the extensive (if not exclusive) federal regulation of tribal oil and gas extraction, the economic burden borne by the Ute Mountain Ute, and New Mexico's de minimis interest in collecting the taxes at issue, the district court should be affirmed. I respectfully **DISSENT**.